VARTAN A. HAMPIKIAN and Others, Plaintiffs, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant.

Supreme Court, New York-County, February 18, 1930.

*Miran Sevasly* and *Herman Silverman,* for the plaintiffs.

*Frederick L. Allen,* for the defendant.

SCHMUCK, J. At first, apparently a troublesome question, the problem originated by these motions and created by this litigation, upon close scrutiny, becomes comparatively a simple sum in agiotal computation. In 1902, at Constantinople, the defendant through its French agency insured the benefactor of these plaintiffs for 10,000 francs, payable at Paris or at the head office in New York. The annual premium of 409.30 francs was paid by the assured at Constantinople in francs until after the World War, when the premium was paid in Turkish currency. Loans on the policy were likewise made in French money. In fact, everything financial was transacted in terms of French money. After the death of the assured in 1925 and proof thereof, as required by the policy, furnished in 1926, and upon surrender of the policy the company sent to each of three of the beneficiaries who lived in Europe a check for 2,523.17 francs and to the other who lived in America a check for $92.60. Upon receipt of these payments releases were given by the European beneficiaries, one of whom cashed her check. Because of the depreciation of the French franc, which led to an alarming diminution in the value of the insurance, plaintiffs sue to recover in United States currency the value of 10,000 francs at the rate of exchange existing in 1902, the date of issuance, less the amount paid by the defendant, for which credit is given.

Disregarding the plea of payment and release, the decision of this controversy will be governed by the rate of exchange controlling, namely: Was it in the contemplation of the parties that the rate of

exchange existing at the date of issuance or the rate prevailing at the date of maturity should control? This question has frequently concerned the courts of this State since the termination of the great war, and the ultimate decision has been that the rate of exchange prevailing on the breach date or day of maturity must control. In *Gross* v. *Mendel* (225 N. Y. 633) the court held that the rate of exchange existing at the time of maturity would govern. In *Hoppe* v. *Russo-Asiatic Bank* (235 N. Y. 37) this rule was reiterated. In *Kantor* v. *Aristo Hosiery Co., Inc.* (248 N. Y. 630), the Court of Appeals announced that in the absence of clear proof of a different intention or exceptional conditions the interests of uniformity and economic policy demanded the application of the breach day or maturity date rule adverted to. In like manner has the United States Supreme Court treated this problem in *Hicks* v. *Guinness* ([1925] 269 U. S. 71).

With the mass of existing authority as a guide, the unescapable result of these applications is that plaintiff's motion for summary judgment must be denied, and the motion of the defendant to dismiss the complaint granted. No costs. Orders signed.